**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
         dguerra@bursor.com
         jglatt@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIONEL CORREA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SUN TROPICS, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

1   Plaintiff Lionel Correa ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Sun Tropics, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on his personal knowledge.

**NATURE OF THE ACTION**

1. Plaintiff brings claims on behalf of himself and others similarly situated who purchased Defendant's Sun Tropics Dragon Fruit Guava juice drink represented as being "100% Juice" and made with "[a] blend of fruit purees and juice concentrates with other ingredients." (the "Product").

2. These representations together signal to reasonable consumers, like Plaintiff, that the Product is comprised of solely fruit and fruit-derived ingredients. Instead, and unbeknownst to Plaintiff who purchased the Product relying on Defendant's representation that the Product is comprised exclusively of juice and juice products, the Product is made with synthetic, non-natural ascorbic acid; a human-made preservative.

3. Accordingly, Plaintiff brings claims against Defendant for violations of (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; (3) Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; and (4) Breach of Express Warranty.

**PARTIES**

4. Plaintiff Lionel Correa is a citizen of California and resident of Solano County, California. Plaintiff purchased Defendant's Dragon Fruit Guava 100% Juice drink from a Costco store in March 2025. Prior to making his purchase, Plaintiff saw and relied on Defendant's on-label representations that the Product was made from "100% Juice" and "[a] blend of fruit purees and juice concentrates with other ingredients" and so reasonably understood that the Product was comprised solely of juice and juice products. Plaintiff saw these representations and warranties prior to and at the time of his purchase. Thus, Plaintiff reasonably relied on Defendant's

representations when he decided to purchase the Product. Accordingly, these representations and warranties were part of the basis of his bargain, in that Plaintiff would not have purchased the Product on the same terms had he known that these representations and warranties were untrue. Furthermore, in making his purchase, Plaintiff paid a price premium due to Defendant's false and misleading claims regarding the Product's purported fruit juice content. Plaintiff, however, did not receive the benefit of the bargain because the Product did not, in fact, contain exclusively 100% juice because it contained ascorbic acid, an artificial non-juice product preservative. Had Plaintiff known that Defendant's representations and warranties about the Product was false and misleading, Plaintiff would not have purchased the Product or would have paid substantially less for it.

5. Plaintiff remains interested in purchasing the Product from Defendant in the future. However, unless and until he can determine if the Product is accurately labeled and properly discloses the preservative and its presence in the Product, Plaintiff will be unable to rely on the truth of Defendant's labeling. So long as the Product is labeled as being comprised of 100% juice—when it contains non-juice, synthetic ingredients—Plaintiff will be unable to make informed decisions about whether to purchase the Product in the future and will be unable to evaluate the different prices between Defendant's Product and competitors' products. Plaintiff will likewise be unable to rely on Defendant's marketing and representations going forward. Moreover, he is likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that its marketing is accurate, non-misleading, and that its Product actually conforms to Defendant's representation that the Product is comprised of only 100% juice.

6. Defendant Sun Tropics, Inc. is a California corporation with its principal place of business in San Ramon, California. Defendant manufacturers, markets, and sells its juice Products through California and the United States.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000.00 exclusive of interest and costs and at least one member of the proposed Classes is a citizen of state different from Defendant.

8. This Court has personal jurisdiction over Defendant because Defendant is a resident of San Ramon, California and so is at home in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

**FACTUAL ALLEGATIONS**

**A.    Defendant's 100% Juice Product**

10. Defendant sells two varieties of Sun Tropics branded fruit juices prominently advertised as being comprised of 100% juice.

11. Plaintiff purchased the Dragon Fruit Guava prominently claiming to be comprised of "100% Juice." In a font smaller than its "100% Juice" representation, Defendant adds that the Product is comprised of "[a] blend of fruit purees and juice concentrates with other ingredients."



12. By explaining on the front label that the "100% Juice" composition is a "blend of fruit purees and juice concentrates with other ingredients," Defendant doubles down on its "100

Juice" representation. It makes clear to reasonable consumers that *only* juice products comprise its "100% Juice" product.

13. These representations are misleading to a reasonable consumer. Food is considered misbranded "[i]f it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless it bears labeling stating that fact[.]" 21 C.F.R. § 343(k). Merely referring to ascorbic acid on the principal display panel—which Plaintiff viewed and relied on Defendant's representations—as a vague "ingredient" does not sufficiently clarify the misleading label. This is so because a reasonable consumer is not expected to look beyond the misleading representations on the front of the box to discover the truth from the small-print ingredient list on the side of the box. *See Willaims v. Gerber Prods. Co.*, 552 F. 3d 934, 939 (9th Cir. 2008).

14. Indeed, by vaguely referring to ascorbic acid as one of the "other ingredients" in the statement identifying the additional fruit products, Defendant fails to properly identify ascorbic acid which "shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods." 21 C.F.R. § 102.5(a). In other words, Defendant fails to "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." *Id.* Accordingly, Defendant's "100% Juice" representation is false and misleading as it contains less than entirely juice. Reasonable consumers understand that "100% Juice" means the Product contains only juice products. Ascorbic acid—a synthetic preservative—is not one of those.

**B.    Ascorbic Acid and Mislabeling**

15. "Ascorbic acid is a human-made isolate used in myriad processed supplements that was created to cost-effectively mimic and replace naturally occurring vitamin C found in natural food. It's often derived from GMO corn starch, GMO corn sugar or rice starch."[1] For that reason, ascorbic acid is referred to as "synthetic vitamin C."[2] Although ascorbic acid can be naturally

---

[1] Smidge Blog, *Why Real Food Vitamin C is better Than Ascorbic Acid – And How To Tell The Difference*, (June 1, 2021), *available* https://www.getsmidge.com/blogs/news/vitamin-c-versus-ascorbic-acid.

[2] Mount Sinai, *Vitamin C (Ascorbic Acid)*, available https://www.mountsinai.org/health-library/supplement/vitamin-c-ascorbic-acid.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                 4

occurring and mimics vitamin C's chemical structure, its "reactive nature makes isolation of the substance from natural sources challenging, which has resulted in all commercial ascorbic acid being synthetically produced."[3]  Ascorbic acid, an antioxidant that helps prevent microbial growth and oxidation in food products, is used primarily as a preservative.

16.     Accordingly, the U. S. Food and Drug Administration ("U.S. F.D.A.") considers ascorbic acid as a food additive.[4]

17.     In fact, just like Defendant's misbranded product here, in 2015, the U.S. F.D.A. informed fruit product producer Chiquita Bananas that its Pineapple Bites and Pineapple Bites with Coconut products were "misbranded within the meaning of section 403(k) of [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail[ed] to declare these preservatives with a description of their functions."[5]  Indeed, it is required that "[a] food to which a chemical preservative(s) is added shall … bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative', 'to retard spoilage', 'a mold inhibitor', 'to help protect flavor' or to 'promote color retention'." 21 C.F.R. § 101.22(j).  As such, "[i]f the beverage contains 100 percent juice and also contains non-juice ingredients that do not result in a diminution of the juice soluble solids … when the 100 percent juice declaration appears on a panel of the label that does not also bear the ingredient statement, it must be accompanied by the phrase 'with added _____,' the blank filled in with a term such as 'ingredient(s),' 'preservative,' or 'sweetener,' as appropriate[.]" 21 C.F.R. § 101.30(b)(1)(3).  Despite the requirement, Defendant fails to identify the ascorbic acid as a preservative, merely lumping it in with the general ingredients.  This is not enough.

---

[3] National Organic Program, *Ascorbic Acid – Technical Evaluation Report*, U.S. DEP'T OF AGRICULTURE (July 17, 2019) *available* https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf.

[4] U.S. Food & Drug Admin., *Food Additive Status List*, *available* https://www.fda.gov/food/food-additives-petitions/food-additive-status-list.

[5] David Bellm, *Food Packaging: FDA Says Chiquita Labels Are Misleading*, Packing Digest (Mar. 11, 2015) *available* https://www.packagingdigest.com/trends-issues/food-packaging-fda-says-chiquita-labels-are-misleading.

**C.     Consumers' Juice and Natural Flavor Preferences**

18.     "Every time you add a bottle of '100% fruit juice' to your cart, you probably thought several fruits had to be squeezed and pressed for its juice to be extracted. After all, that's what the wording suggest."[6] To that end, "[c]lean label claims resonate for purchasers of … juices and include natural, no artificial flavors, and no artificial colors."[7] In fact, at least one survey found that "Americans are paying more attention to ingredient lists, choosing clean ingredients and avoiding chemical sounding ingredients" while "[a]bout half of Americans say they seek out natural flavors at least some of the time [and] artificial flavors, colors, sweeteners and preservatives were sought out by only about one in 10 consumers, with approximately half saying they avoid each of them at least some of the time."[8]

19.     In fact, recent consumer research shows that "[f]ruit juices are often marketed as healthy options, but misleading fruit juice claims can confuse consumers. Terms like '100% fruit juice,' … can sometimes be used to make the products appear healthier than they actually are."[9] Indeed, the term 100% Juice "suggests that the product is made entirely from the juice of fruits, with no added sugars, preservatives, or artificial ingredients."[10]

20.     Knowing this, producers, like Defendant, aim to capitalize on market preferences by labeling products as containing "100% Juice." Unfortunately for consumers, Defendant's marketing and labeling practices are precisely what consumers are seeking to avoid: pure juice representations made clearly and conspicuously on the front labels while inconspicuously disclosing contradictory ingredient information on the other side of the packaging.

---

[6] Zakiyah Ebrhim, *Why the '100% Fruit Juice' Label Is A Lie*, NEWS24 (Sept. 2, 2022) *available* https://www.news24.com/life/wellness/diet/why-the-100-fruit-juice-label-is-a-lie-20220902-2.

[7] Innova Market Insights, *Food Trends: US Consumer Preferences* (May 14, 2024) *available* https://www.innovamarketinsights.com/trends/food-trends/.

[8] Food Insight, *IFIC Survey: From "Chemical-sounding" to "Clean": Consumer Perspectives on Food Ingredients* (June 17, 2021) *available* https://foodinsight.org/ific-survey-from-chemical-sounding-to-clean-consumer-perspectives-on-food-ingredients/.

[9] Rashi Chaudhary, *Consumer Awareness: What You Need To Know About Fruit Juice Claims*, OMJOOS (Sept. 17, 2024) *available* https://www.omjoos.com/news-and-blog/2024/09/17/consumer-awareness-what-you-need-to-know-about-fruit-juice-claims/?srsltid=AfmBOooEq9DDWAPA0Q_i14WvIM-0NNwcbRdc_lzd4jI_J0VKUtzxQ2hp.

[10] *Id.*

**FED. R . CIV. P. 9(B) ALLEGATIONS**

21. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Though Defendant is best situated to know the composition of its Product, to the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

(a) **WHO:** Sun Tropics, Inc.

(b) **WHAT:** Defendant's conduct here was, and continues to be, deceptive because it omitted and concealed that the Product contains ascorbic acid, a synthetic ingredient or derivative despite affirmatively representing that the Products are comprised wholly of juice. This false and misleading representation was material to Plaintiff and the Classes because they would not have paid the same amount for the Product or would not have purchased the Product at all had they known the Product contained a synthetic, non-juice preservative and so was not comprised of 100% juice and juice byproducts. Defendant knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class Members, in making their purchasing decisions, given its expertise and offering of products, as described above, yet it continued to pervasively market the Product in this manner in California and the United States.

(c) **WHEN:** Defendant made material misrepresentations and omissions to Plaintiff and the members of the Classes during the putative class period, including prior to and at the time of purchase, despite its knowledge that the Product did not, in fact, contain exclusively 100% juice and juice byproducts. Plaintiff and Class Members viewed the packaging of the Product when purchasing and viewed the representations and warranties made by Defendant and understood them to mean that the Product did not contain any ingredients other than juice and juice byproduct.

(d) **WHERE:** Defendant's made material misrepresentations and omissions on the Product's labels and packaging and marketing materials.

    (e)  **HOW:** Defendant made material misrepresentations and omissions of fact regarding the Product by representing and warranting that the Product was comprised of 100% juice and juice byproduct. Defendant, on its labeling, omitted material disclosures to consumers about the true contents of the Product.

    (f)  **INJURY:** Plaintiff and members of the Classes purchased, and paid a premium (up to the full purchase price), or otherwise paid more for the Product than they would have, or alternatively they would not have purchased the Product at all, absent Defendant's misrepresentations and omissions.

## CLASS ALLEGATIONS

22. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23, defined as:

> ***Nationwide Class*:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Product primarily for consumption (the "Nationwide Class").
>
> ***California Subclass:*** All persons in California who, during the maximum period of time permitted by the law, purchased Defendant's Product primarily for consumption (the "California Subclass").

23. The Classes do not include (1) Defendant, its officers, and/or directors; (2) the Judge and/or Magistrate to whom this case is assigned; (3) the Judge or Magistrate's staff and family; and (4) Plaintiff's counsel and Defendant's counsel.

24. Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

25. ***Community of Interest:*** There is a well-defined community of interest among Members of the Classes, and the disposition of the claims of these Members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

26. ***Numerosity*:** While the exact number of members of the Classes is unknown to Plaintiff at this time, and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. Members of the Classes may be notified of

the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

27. **Existence and Predominance of Common Questions of Law and Fact**: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

(a) Whether Defendant's Product was comprised exclusively of 100% fruit juice;

(b) Whether Defendant's Product contained synthetic additives contrary to a reasonable consumer's understanding of Defendant's label claims;

(c) Whether reasonable consumers would understand Defendant's representations and warranties concerning its juice content were untrue and misleading;

(d) Whether Defendant's representations and warranties were material;

(e) Whether Defendant was unjustly enriched as a result of its unlawful conduct alleged in this Complaint;

(f) Whether Defendant violated California's Consumers Legal Remedies Act, ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*;

(g) Whether Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; and,

(h) Whether Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.

28. **Typicality:** The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading advertising about the fruit juice composition of its Product, purchased the deceptive Product in reliance on those representations and warranties, and suffered a loss as a result of those purchases.

29. **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Classes because he has no interests adverse to the interest of the Members of the Classes. Plaintiff is committed to the vigorous prosecution of this action, and, to that end, has retained skilled and experienced counsel.

30. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action because the expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek redress of their claims other than through the procedure of a class action. In addition, even if Class Members could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Member of the Classes. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with California's consumer protection laws. If separate actions were brought by individual members of the Classes, Defendant could be subject to inconsistent obligations.

## CAUSES OF ACTION
### COUNT I
**Violation of California's Consumer's Legal Remedies Act ("CLRA"),
Cal. Civ. Code § 1750, *et seq*.
(On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

31. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

32. Plaintiff brings this claim individually and on behalf of himself, the Nationwide Class, and California Subclass against Defendant.

33. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

34. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

35. Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

36. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers by advertising that the Product contained exclusively 100% juice even though it contains synthetic preservatives.

37. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

38. On May 5, 2025, prior to filing this action, Plaintiff sent a pre-suit notice letter pursuant to CLRA § 1782. The letter was sent certified mail, return receipt requested, and provided notice of Defendant's violation of the CLRA and demands that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged herein. Defendant failed to remedy the issues raised in the letter.

39. Plaintiff and the Classes seek (1) actual and punitive damages, (2) restitution, (3) reasonable costs and attorneys' fees, and (4) to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

**COUNT II**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On behalf of the Plaintiff, the Nationwide Class, and California Subclass)**

40. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

41. Plaintiff brings this claim individually and on behalf of the Members of the Nationwide Class and California Subclass against Defendant.

42. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

43. Plaintiff has standing to pursue this claim because he suffered an injury-in-fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct. Specifically, Plaintiff purchased the Product for his personal use. In so doing, Plaintiff relied upon Defendant's false representations that the Product was comprised of exclusively "100% Juice" when the Product actually contained synthetic preservatives. Plaintiff spent money in the transaction that he otherwise would not have spent had he known the truth about Defendant's advertising claims.

44. The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

45. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq*.

46. Defendant violated the UCL's proscription against engaging in **Unlawful Business Practices** through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.* and CLRA, Cal. Civ. Code § 1770(a)(5) and (a)(7) as alleged above. Defendant also violated the UCL's unlawful prong because the Product is misbranded pursuant to federal regulations.

47. Defendant has also violated the UCL's proscription against engaging in **Unfair Business Practices**. Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such

conduct. Defendant's deceptive "100% Juice" representations have misled consumers into purchasing the Product over other truthfully labeled competitors.

48. Plaintiff and the Classes suffered substantial injury by virtue of buying the Product that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the inclusion of ascorbic acid, a synthetic preservative.

49. There is no benefit to consumers or competition from deceptively marketing that the Product is comprised of 100% juice when it is not.

50. The gravity of the consequences of Defendant's conduct as described above outweigh any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace. Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the Classes.

51. Plaintiff and the Classes could not have reasonably avoided their injury or known that the Product's prominent, front-label marketing was in fact inaccurate and contradicted by Defendant's back-label, fine-print disclosures. As such, they could not have reasonably avoided the injury they suffered.

52. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the Classes seek an order of this Court that includes, but is not limited to, requiring Defendant to (a) provide restitution to Plaintiff and the other members of the Subclass; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff's attorneys' fees and costs.

## COUNT III
**Violation of California's False Advertising Law
Cal. Bus. & Prof. Code § 17500
(On Behalf of Plaintiff, the Nationwide Class, and the California Subclass)**

53. Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

54. Plaintiff brings this claim on behalf of himself, the Nationwide Class, and the California Subclass against Defendant.

55. Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the Nationwide Class, the California Subclass, and the public.

As described throughout this Complaint, Defendant misrepresents that the Product is comprised of 100% juice and free of synthetic additives when they contain ascorbic acid, a synthetic additive.

56. By Defendant's actions, they have disseminated uniform advertising regarding the Product across California and the U.S. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*. Such advertisements were intended to, and likely did, deceive the consuming public.

57. The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant affirmatively represented that the Product is comprised of 100% juice when it contains ascorbic acid, a synthetic, non-juice preservative.

58. In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue and misleading in violation of California law. Plaintiff and the members of the Classes based their purchasing decisions on Defendant's material false and misleading representations and warranties about the composition of its Product. Plaintiff and the Classes were injured in fact and lost money and property as a result, in an amount to be proven at trial.

59. The misrepresentations by Defendant of the material facts described and detailed above herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq*.

60. Accordingly, Plaintiff, the Nationwide Class, and the California Subclass seek all monetary and non-monetary relief allowed by law, including (a) restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; (b) declaratory relief; (c) reasonable attorneys' fees and costs under Cal. Code Civ. Proc. §1021.5; and (d) injunctive relief, and other appropriate equitable relief.

## COUNT IV
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Nationwide Class)**

61. Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

62. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

63. Plaintiff brings this claim under the laws of the State of California.

64. Plaintiff and the Nationwide Class Members formed a contract with Defendant at the time Plaintiff and the Nationwide Class Members purchased the Product.

65. The terms of the contract include the promises and affirmations of fact made by Defendant on the Product's packaging that it was comprised of 100% juice.

66. This labeling and advertising constitute express warranties and became part of the basis of the bargain and part of the standardized contract between Plaintiff and the Nationwide Class and Defendant.

67. As set forth above, Defendant purports through its labeling, marketing, and packaging, to create an express warrant that the Product is comprised of 100% juice and therefore free of synthetic, non-juice preservatives. However, Defendant breached its express warranties about the Product by including ascorbic acid, an artificial, synthetic additive, thereby rendering the prominent "100% Juice" representation false and misleading. Simply, the Product does not conform to Defendant's representations and warranties.

68. Plaintiff and the Nationwide Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

69. Plaintiff and the members of the Nationwide Class would not have purchased the Product had they known the true nature of the Product.

70. As a result of Defendant's breach of express warranty, Plaintiff and each member of the Nationwide Class suffered financial damage and injury as a result and are entitled to damages, in addition to costs, interest and fees, and attorneys' fees, as allowed by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a) For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Classes, and Plaintiff's Counsel as Class Counsel;

b) For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e) For prejudgment interest on all amounts awarded;

f) For an order of restitution and all other forms of equitable monetary relief;

g) For injunctive relief as pleaded or as the Court may deem proper;

h) For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: June 30, 2025

**BURSOR & FISHER, P.A**.

By:   /s/ *L. Timothy Fisher*
         L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
            dguerra@bursor.com
            jglatt@bursor.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

      1.     I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff who resides in Fairfield, California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

      2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California. Additionally, Defendant transacts substantial business in this District, including sales of the Product at issue, and Defendant advertised and marketed the Product at issue to Plaintiff in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 26th day of June, 2025.

                                                        */s/ L. Timothy Fisher*
                                                          L. Timothy Fisher